PABST BREWING COMPANY, Appellant, vs. CITY OF MILWAU-
KEE, Respondent.

*October 24—November 14, 1905.*

*Municipal corporations: Street improvements: Special assessments:
Irregularities: Voluntary payment: Waiver: Consideration:
Knowledge of facts: Estoppel: Conditions precedent to order-
ing work.*

1. In a case where the grading of a street can only be legally or-
dered by a city and performed at the expense of the owner of
abutting real estate to the extent of the excess of benefits ac-
cruing to the property by the improvement over the damages
thereto, and such excess has been, in form but not legally, as-
certained and the conditions precedent, in form, requisite to
payment of the assessment have been satisfied, such payment
by a property owner without protest constitutes waiver on his
part of all errors which might have been insisted upon to de-
feat the tax.

2. Payment of a special assessment tax without protest, in the cir-
cumstances above stated, as regards the competency of the
payor to recover back the money is within the principle that
taxes voluntarily paid without protest cannot be recovered back.

3. The rule, that special street improvement taxes paid without pro-
test under the circumstances before stated.cannot be recovered
back, applies whether the action for the recovery is direct or
the form of the relief sought will accomplish that result in ef-
fect.

4. If, in the circumstances above stated, the amount charged against
a parcel of abutting property is in form pretended by the city
to be the amount legally so chargeable, but in fact no assess-
ment of damages to the property was made, payment of such
amount without protest constitutes submission to the demand
as being based on a valid determination of the excess of bene-
fits to the property over damages caused thereto by the im-
provement and precludes any successful appeal by the property
owner grounded on an attitude on his part inconsistent there-
with, regardless of any element of estoppel in the technical
sense of that term.

5. By judicial policy firmly established in special classes of cases,
including that of recovering back money paid as taxes with-
out protest, one cannot after waiving a right turn and insist

upon it and enforce such insistence by judicial remedies, even though there is no element of estoppel involved. Such is the defense of waiver strictly so-called.

6. The defense of waiver does not require to perfect it any consideration beneficial to the waivee nor any element of estoppel.

7. An act to be efficient in support of the defense of waiver must be done by the waivor with knowledge, or reasonable means of knowledge, of the facts and with intent on his part to forego insisting upon the right waived.

8. Knowledge essential to support a defense of waiver may be constructive as well as actual, and the intent essential to such defense may be implied as well as express.

9. The defense of waiver created as to an action to recover back a street improvement tax, under the circumstances mentioned in the foregoing, forms the basis of estoppel which becomes complete by addition of the element of change of position on the part of the municipality receiving the payment before any change of attitude on the part of the payor, so that the former would be prejudiced by such change of attitude if the right thus claimed were enforced.

10. Under sec. 1210$d$, Stats. 1898, notwithstanding any city charter prohibition against ordering the work of grading a street except at the expense of owners of property abutting thereon to the extent of the excess of benefits over damages caused to the property by the improvement, a valid determination of the amount chargeable to the property is not a condition precedent to ordering the work done in order to make the cost thereof to the extent contemplated a lien upon the property.

11. When the amount chargeable to property abutting on a street for the cost of improving the same has been in form, but not validly, determined and the same has nevertheless been paid to the city for the benefit of the contractor, the municipality may readily protect itself from loss by reason of such invalidity by a reassessment under sec. 1210$d$, Stats. 1898, before paying the money over to the contractor. If the property owner remains silent until such payment shall have been made, such circumstance in connection with the waiver created by the payment itself, under the circumstances, satisfies all the essentials of *estoppel in pais.*

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action to recover compensation for damages claimed to

have been caused to plaintiff by the unlawful grading of Burleigh street in the city of *Milwaukee* in front of its real estate. By appropriate allegations the property was described, plaintiff's ownership stated, the grading to the injury thereof to the extent of $6,000 set forth, together with facts to the effect that the work was done by direction of the city of *Milwaukee,* assuming to act under its charter authority to grade and pave streets at the expense of the abutting property owners to the extent of the benefits accruing to such property and in excess of the damages thereto; and that the city acted outside its jurisdiction in the matter, in that it failed to cause an assessment of damages as well as one of benefits to be made before ordering the work to be done, so that the excess between the damages and benefits could be determined, and only such excess charged against the property. Defendant answered putting in issue the alleged failure of the city to make an assessment of damages as well as one of benefits, and alleging that plaintiff paid the amount charged against its property without protest and was therefore estopped from claiming that the grading was unlawful.

The cause was tried by the court. Findings of fact were made substantially in accordance with the allegations of the complaint and stipulation of the parties, thus: The proceedings to charge abutting property with the cost of grading and improving the street in front of the same were concluded August 30, 1897. The assessment made by the board of public works was formally confirmed and adopted by the common council of the city of *Milwaukee.* In making such assessment such board did not take into consideration the injury that would be caused by the grading to abutting property. The cost of the work of improving the street was apportioned on the front-foot basis. The work of grading and improving the street was done under contract between the city of *Milwaukee* and C. A. Kellner made August 3, 1897. Such contract provided that the contractor should accept in payment for per-

formance on his part, so far as the same would go for that purpose, the special assessment certificates issued against property abutting on the street. The amount assessed against plaintiff's property.was $2,465.32, and a certificate for that amount was in due form issued for the benefit of the contractor. It was paid by the plaintiff without complaint January 20, 1899. It had notice of all the proceedings to charge its property with such amount, and of the work of grading and improving the street as the same progressed. It made no protest or complaint in respect to the matter until over six years after the alleged unlawful grading was done.

The court decided as matter of law that the act of plaintiff in paying the sum assessed against its property without protest constituted a waiver on its part of all defects in the proceedings to authorize the grading of the street, which precluded its recovering the damages claimed, or any damage to its property caused by such grading. Judgment was rendered accordingly, from which this appeal was taken.

For the appellant there was a brief by *C. H. Hamilton,* attorney, and *Howard Van Wyck,* of counsel, and oral argument by *Mr. Hamilton.*

For the respondent there was a brief by *Carl Runge,* city attorney, and *R. S. Witte,* assistant city attorney, of counsel, and oral argument by *Mr. Witte.*

Marshall, J. The question for decision here is this: In case of a city charter making it unlawful for the municipality to grade and improve a street, except at the expense of abutting landowners to the extent of the excess of the benefits to their lands over the damages thereto caused thereby, and jurisdiction to determine such excess being in form obtained, but subsequently lost before the final result is reached, so that, though such excess is in form determined, the decision is in fact invalid, yet nevertheless the lotowner voluntarily pays the amount so charged against his property to the city

treasurer for the benefit of the party under contract to make the improvement, who subsequently receives the same before any change in the attitude of such owner,—can the latter thereafter hold the municipality liable in damages for injury to his property caused by such improvement upon the ground of the jurisdictional error aforesaid?

It should be noted that the point here involved does not go so far as to include the status of a property owner in the circumstances stated, omitting the element of jurisdiction in the initiatory proceedings. Whether, if the stated proposition were to be decided in the affirmative, the rule should be the same in case of a total want of jurisdiction in the first instance, will need to be considered when reached. So far as the case in hand goes, we have covered it by the stated question.

It seems that the proposition in controversy is ruled in the affirmative by *Shirley v. Waukesha,* 124 Wis. 239, 102 N. W. 576. True, the remedy resorted to there after payment of the invalid assessment was in equity to set the same aside and obtain a reassessment in supposed conformity to sec. 1210d, Stats. 1898, and the acts amendatory thereof, which in broad terms authorize a reassessment in any case where the first attempt to make a valid one is ineffective, but it is hardly logical to hold that the property owner is precluded by payment from subsequently maintaining an action to determine whether the amount paid is legal, and if not to secure a judicial adjustment of the matter, and yet that the way is open to do the same thing, in effect, by an action for damages for the unlawful grading of the street, a fortiori to go further and regard as recoverable damages the sum in excess of the exaction submitted to. The reasons therefor appear from what follows:

In the *Shirley Case* the inability of the property owner, after having paid the assessment without objection, to successfully invoke the reassessment law for relief for having paid

in excess of the proper charges, was not referred to any particular fundamental principle. It was said that the property owner was chargeable with knowledge of the proceedings to assess the tax; that payment was to be regarded as voluntary with knowledge of the facts and that the payor could not be allowed to change his attitude once taken to one inconsistent therewith; that the rule precluding the recovery of taxes or other money voluntarily paid with knowledge of the facts applied. The authorities cited were of the class where such recoveries were attempted. So the real principle upon which the decision rests is that of waiver or acquiescence. The circumstance was not present there as here of the amount charged against the property being paid by the owner to the municipality for the use of the contractor employed to do the work of improvement, and by such municipality paid to such contractor, in advance of any notice by such owner of a claim that the assessment would be challenged as illegal. The effect of this additional element is of importance as will be hereafter seen.

In the circumstances of the *Shirley Case* probably the only rule of law standing in the way of the maintenance of the action was waiver, acquiescence, or election. The distinguishing features between the different phases of waiver, as viewed in its general sense, are so slight as to hardly be appreciable. Generally speaking, in neither is any consideration in a pecuniary sense nor any element of estoppel required. The contrary of this may be found asserted, but the soundness of the foregoing is easily demonstrable by reference to the different situations to which it has been frequently applied. In case of payment of a tax without protest, or other claim voluntarily and with knowledge of the facts, an action cannot be maintained to recover back the money, regardless of whether the payee so changed his position on the faith of such payment that the previous status cannot be fully restored by a return of the money. It is manifest that the

disability to enforce such return cannot be based on any other reason than that of unqualified submission to the attitude of the payee,—the doctrine that one cannot blow hot and then blow cold and have the aid of judicial remedies in the matter. That is not of such universal application as the doctrine of estoppel.

The efforts of courts and text-writers to harmonize the situations to which the principle of waiver has been applied with the idea that some element of estoppel or some consideration is necessary to support the defense has led to many interesting discussions and the assignment of reasons much too shadowy to be appreciated by minds generally, if at all. It must be conceded that in many cases where the defense of waiver has prevailed no element of estoppel can be pointed to.   If it were otherwise, many instances of supposed waiver would be misnamed, the proper designation of the ·defense being estoppel.

It may be that the theory advanced by a learned writer is correct, that in every case where the law of waiver is applicable and there is no element of estoppel, there is one of consideration, in the broad sense of the term as applicable to contracts.   A consideration essential to a contract is satisfied by a disadvantage to the promisee as well as by a benefit to him. 1 Parsons, Contracts, *431 (9th ed. 467).   So waiver may perhaps be viewed as involving a consideration and supported on that theory.   In every case where the waivee asserts as a defense submission by the waivor, the former would be prejudiced if the latter were allowed to successfully change his position.    58 Cent. Law J. 264.

It would seem that the more satisfactory ground on which to support the doctrine of waiver is that it is a rule of judicial policy, the legal outgrowth of judicial abhorrence, so to speak, of a person's taking inconsistent positions and gaining advantages thereby through the aid of courts,—a rule by which, regardless of absence of any element of estoppel or con-

sideration as those terms are popularly understood, the maxim that one shall not be permitted to blow hot, then with advantage to himself turn and blow cold, within limits sanctioned by long experience as required for the due administration of justice, has been prohibitively applied. It is applied where one with knowledge of the facts voluntarily pays a demand upon him. It is applied when one with knowledge, or reasonable means of knowledge, of the facts having two inconsistent remedies chooses one of them. It is applied where one without objection and with such knowledge, or means of knowledge, receives property in consummation of an executory contract. The tendency of courts is to consider as within one of the exceptional classes any situation which is within the principle of it, both as regards the mere fact of waiver and the importance in the administration of justice of holding the waivee to the position he voluntarily and with knowledge of the facts has elected to take.

In the light of the foregoing the court was fully justified in the *Shirley Case* in classing with actions to recover taxes paid without protest and to recover with such knowledge money paid voluntarily upon other demands, the effort to obtain a reduction of the balance between benefits and damages caused to property abutting on a street by the grading thereof, after submission by the owner of the property to the original determination of the matter by voluntarily paying the amount demanded with such knowledge, or reasonable means of knowledge. The effect of such an effort, if successful, would be to recover back money voluntarily paid for taxes without protest.

It is suggested that there can be no waiver without intent to waive based on knowledge of the facts. True, but one is presumed to know that which in contemplation of law he ought to know, and one is presumed to waive that which is necessarily implied from his conduct. Constructive as well as actual knowledge of the facts, and implied as well as express intent, satisfies the prime essential of a conclusive

waiver. *Locke v. Williamson,* 40 Wis. 377; *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 22, 85 N. W. 685; *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 90 N. W. 476; *Bostwick v. Mutual L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Kennedy v. Roberts,* 105 Iowa, 521, 75 N. W. 363; *Fishback v. Van Dusen,* 33 Minn. 111, 22 N. W. 244; *Donahue v. Windsor Co. F. M. Ins. Co.* 56 Vt. 374. A standard reference work puts the matter thus:

"The intent to waive may appear as a legal result of conduct. The actuating motive, or the intention to abandon a right, is generally a matter of inference to be deduced with more or less certainty from the external and visible acts of the party, and all the accompanying circumstances of the transaction, regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intention to the contrary." 29 Am. & Eng. Ency. of Law (2d ed.) 1095.

But, suggests counsel for appellant, conceding that the elements of knowledge and intent were present in this case, they only point to submission to the assessment of benefits,—since no assessment of damages was made, payment of the assessed benefits was perfectly consistent with an intent not to waive the right to an assessment of damages. The logic is ingenious but fallacious. It confuses assessment as applied to mere valuation of benefits upon one side and damages on the other with the term as applied to the final determination of the amount chargeable to the property for the improvement of the street in front of the same so as to create a lien therefor thereon. No right on the part of the city in this case existed to demand of appellant any sum for work in front of his property on any other basis than that of such a determination. The municipal records show that the sum demanded was ostensibly laid on that basis, but falsely nevertheless, in that though the report of the assessing board was to the effect that the property would not be damaged at all by the improvement,

the truth of the matter was so obviously to the contrary as to indicate that no real determination of the fact occurred.

So when appellant found his property charged with the amount which he paid, he knew, or ought to have known, that it was pretended by the municipality, in form of law, that his benefits from the improvement in excess of the damages were measured thereby. Such being the situation, obviously, payment without objection constructively conceded the claim made to be proper. It is highly unreasonable to suppose appellant had in mind that a recognition of such claim by paying it involved mere submission to the assessment of benefits saving the right to damages. Every reasonable inference of fact and of law is to the contrary.

It is said that the differences between the *Shirley Case* and this one are such as to suggest, at least, caution in applying the rule of the former to the latter. We do not perceive any controlling difference between the two cases. True, the *Shirley Case* was in equity and this at law, but the law of waiver in case of an attempt to recover taxes voluntarily paid is as effective in one form of remedy as in another. The form of relief sought here is in damages, and the effect of a recovery would be to regain the taxes paid and some besides. The relief sought in the *Shirley Case* was a reassessment with a view of recovering taxes paid so far as found on such reassessment that the amount at first determined was too large. Notice appeared of record that the sum demanded was the claimed benefits less the damages in the one case as well as in the other. A readjustment of the matter between the municipality and the property owner would have been the effect of a judgment such as the one prayed for in the former case, and the effect of a judgment favorable to plaintiff in this case would have been the same in kind. So if there were no other element in this case than in the *Shirley Case* the latter would rule the former. But, as before suggested, there is an additional element taking the case out of the exceptional class

covered by the doctrine of waiver, in one or other of its phases, and locating it in that ruled by the law of estoppel in its technical sense.

Counsel assert with apparent confidence that every element of estoppel is lacking here, while to us it appears that every such element is significantly present. As we have seen, upon appellant's paying to the city treasurer, under the circumstances, the amount demanded of him he erected in favor of the municipality the defense of waiver as regards the legality of the improvement. That formed the basis for the creation of the defense of estoppel. The one essential to perfect such defense was the doing of some act by the municipality, or failing in that regard on the faith of the waiver, so that an effective change of position on the part of the property owner would thereafter be prejudicial to the city. If a person takes a position for the purpose of influencing, or which is obviously reasonably calculated to influence, the conduct of another in the mutual relations between the two as regards business or property, so that if such person were to effectively change his position such other would suffer loss, and such other does so act, the position of such person so taken and inducing such act is thereby irrevocably fixed. Such is the doctrine of *estoppel in pais*. *Simonsen v. Stachlewicz,* 82 Wis. 338, 52 N. W. 310; *Mygatt v. Tarbell,* 85 Wis. 457, 55 N. W. 1031; *Moller v. J. L. Gates L. Co.* 119 Wis. 548, 97 N. W. 174.

Waiver, acquiescence, or election by one often precludes him from insisting successfully upon advantages which he has concluded with knowledge of the facts to forego, but that forms but an element producing the legal consequences—denominated *estoppel in pais*. The crowning element of such legal consequences is the change of position, in reliance upon the prior element mentioned, to one from which there can be no retreat without loss. *Priewe v. Wisconsin State L. & I. Co.* 103 Wis. 537, 552, 79 N. W. 780.

It seems that the fulness with which this case satisfies all the elements of estoppel above mentioned hardly needs to be pointed out. When the proceedings which created the charge against appellant's property were had, the law, as before indicated, permitted the grading of streets in the city of *Milwaukee* only upon condition of the work being done at the expense of abutting property to the extent of benefits in excess of damages thereto thereby produced. The law did not require a valid determination of such excess as a condition precedent to ordering the work done as was the case in *Pittelkow v. Milwaukee,* 94 Wis. 651, 69 N. W. 803, and similar cases. Now, where such improvement is authorized only at the expense of abutting property to the extent of the excess of benefits over damages, it is not unlawful to proceed with the work without a valid assessment. The amount of the assessment, if illegally arrived at in the beginning, may be changed to the proper amount by reassessment proceedings.

So when the demand was made of appellant he knew, or ought to have known, these things: The work which had been done in front of his property was performed under contract with the city upon the faith of the amount charged against such property having been legally arrived at. The city was a mere agent to collect such amount and pay it to the contractor. In case of the assessment being illegal, the way was open for the city to protect itself from loss by reassessment proceedings so long as the illegal amount remained unpaid to it or, if so paid, the same was not turned over to the contractor, and not otherwise. In that situation appellant paid the assessment in question, kept silent until the money passed from the control of the city to the contractor, and for several years thereafter, putting the respondent in a situation where the success of appellant's demand for damages for an unlawful disturbance of his property would necessarily irreparably damage the municipality. That obviously made a case for the operation of *estoppel in pais.*

The question is worthy of consideration as to whether ch. 262, Laws of 1897, incorporated into sec. 1210d, Stats. 1898, whereby a valid determination of the amount chargeable to property abutting on a street on account of the improvement thereof is not a condition precedent to making the improve-ment, notwithstanding city charter regulations on the subject, does not render such decisions as *Meinzer v. Racine,* 68 Wis. 241, 32 N. W. 139; *S. C.* 74 Wis. 166, 42 N. W. 230; *Drum-mond v. Eau Claire,* 85 Wis. 556, 55 N. W. 1028; *Jorgenson. v. Superior,* 111 Wis. 561, 87 N. W. 565, and similar cases insufficient under the circumstances we have here, omitting all questions of waiver or estoppel, or those present in *Fried-rich v. Milwaukee,* 114 Wis. 304, 90 N. W. 174, to support an action for damages for an illegal disturbance of the street. We do not intend now to intimate an opinion one way or the other in respect to the matter, but deem it proper and advis-able to suggest the question as it has been overlooked by coun-sel and trial courts in former cases where it might legiti-mately have been raised, and it should not be in any future litigation of the same sort.

*By the Court.*—The judgment is affirmed.