BURGESS and others, Appellants, vs. COMMERCIAL NATIONAL
BANK OF APPLETON and another, Respondents.

*October 29—November 15, 1910.*

*Payment: Under duress or voluntary? Exaction of excessive amount
on note: Fraud: Pleading.*

1. Where the holder of a promissory note demanded payment of a
   sum in excess of the amount legally due thereon as a condition
   of surrendering bonds pledged for its payment, and the makers,.
   with knowledge of the facts, paid such excessive sum in order
   to obtain immediate possession of the bonds so that the neces-
   sary delivery could be made to a purchaser to whom they had
   made arrangements to sell the bonds, such payment was not
   made under duress, but was voluntary, and the excess so paid
   cannot be recovered.
2. An allegation in such case that defendants (the payee of the note
   and a bank with which it had been left) "conspired together to
   fraudulently exact from plaintiffs an excessive amount of in-
   terest" was insufficient, when construed with the other allega-
   tions of the complaint, to show actionable fraud.

APPEAL from an order of the circuit court for Oneida ·
county: A. H. REID, Circuit Judge. *Affirmed.*

This is an appeal from an order of the court below sustain-
ing a demurrer to the complaint. The complaint alleges the
copartnership of the plaintiffs and the corporate existence of
the defendants, and further alleges:

"4. That heretofore and on, to wit, May 17, 1909, these
plaintiffs, being indebted to the defendant power company in
the sum of $98,450, executed and delivered to the said de-
fendant power company their promissory note in writing,
dated said day, wherein and whereby these plaintiffs promised
and agreed to pay to the order of said defendant power com-
pany at its office $98,450 five months after the date of said
note, with interest at the rate of six per cent. per annum, pay-
able at maturity; that as collateral security for the payment
of said note the plaintiffs then and there delivered to said de-
fendant power company $124,000 par value of the first
mortgage 5 per cent. gold bonds of the Ashland Light, Power

& Street Railway Company, due January 1, 1939, which said bonds were the property of these plaintiffs; that hereto annexed, marked Exhibit 1 and made part hereof, is a copy of the said note and the conditions thereof as to the said bonds being deposited as collateral security for its payment.

"5. That it was agreed by and between the plaintiffs and the defendant power company at the time of the execution and delivery of said note that the plaintiffs should have the right to pay the whole or any part thereof at any time before maturity, and that when and as any partial payment was made upon said note there should be surrendered and delivered to plaintiffs a proportionate amount of said bonds, which, for convenience, was agreed to be as 86 is to 100, that is—as often as each $86 should be paid upon said note, $100 par value of said bonds should be delivered to plaintiffs, until, when final payment of the note and interest should be made, all of said bonds remaining on hand should be surrendered and delivered to plaintiffs.

"That by some arrangement, the nature of which is wholly unknown to plaintiffs, said defendant power company soon after the date of said note delivered and turned over to said defendant bank the said note and bonds, and plaintiffs were instructed and directed to make all payments upon said note direct to the defendant bank, and plaintiffs were informed by said defendant power company that upon any payment being made the proportionate amount of bonds above stated would be forthwith delivered to plaintiffs by the defendant bank.

"6. That thereafter, and on, to wit, July 13, 1909, plaintiffs paid upon said note the sum of $43,000, which amount, by direction of the defendant power company, was paid to and accepted by the defendant *Commercial National Bank,* and said defendant bank, upon receipt of such payment, indorsed the same upon said note and surrendered and delivered to plaintiffs $50,000 par value of the said bonds of the said Ashland Light, Power & Street Railway Company.

"7. That thereafter plaintiffs made payments upon said note and defendant bank accepted from plaintiffs and indorsed thereon the amounts at the dates stated, as indicated in Exhibit 2 hereto annexed and made part hereof.

"8. That as each payment was made a proportionate part of bonds were delivered, until on September 30, 1909, the

date when the last payment of $7,740 was made, as shown by Exhibit 2 hereto annexed, there remained due upon said note $110 of principal and no more, and that there remained on hand $10,000 par value of said bonds, deposited as collateral security; that on or about October 6, 1909, plaintiffs were desirous of paying the final amount due upon said note, together with the interest thereon, and of having the note canceled, surrendered, and delivered up to them, and the $10,000 bonds held as collateral by said defendant bank surrendered and delivered to plaintiffs; that plaintiffs had then made arrangements for the sale of said bonds, and it was necessary in handling them that they be obtained immediately by plaintiffs, so that a delivery could be made thereof to the purchaser; that on October 11, 1909, there was due upon said note the sum of $110 principal, and the sum of $1,391.45 interest, and no more; that plaintiffs, on or about the 9th day of October, 1909, inquired of said bank what would be the amount necessary to pay said note and interest in full so that said bank would surrender and deliver to plaintiffs the said bonds, and plaintiffs were then notified by defendant bank that before said bonds would be delivered full interest must be paid upon said note, making no account of the partial payments which had been made from time to time, as shown by said Exhibit 2, and that said interest amounted to the sum of $2,355.60, which amount of interest said defendant bank required plaintiffs to pay before the $10,000 par value bonds held by it as aforesaid would be surrendered and turned over to plaintiffs; that in order to secure possession of said bonds from defendant bank promptly so that plaintiffs could use the same and deliver them according to the sale made by plaintiffs as above stated, plaintiffs were compelled to pay to said defendant bank the sum of $964.15, interest, in excess of the amount legally due upon said note and in excess of the amount due according to the agreement and understanding between plaintiffs and defendant power company at the time said note was executed and delivered to the defendant power company.

"That by reason of said transaction the defendant bank, on or about the 11th day of October, 1909, wrongfully, fraudulently, and unlawfully obtained and exacted from these plaintiffs the said sum of $964.15, which amount these

plaintiffs paid to said bank on said date, together with the sum of $1,391.45, the actual amount of interest due, and the sum of $110, the sum due for principal upon said note, making in all the sum of $2,465.60.

"That as plaintiffs are informed and believe, said defendant bank was acting as agent for the defendant power company in making the collections of moneys upon said note paid by plaintiffs, and in surrendering and delivering to plaintiffs the bonds from time to time as payments were made, and that, in compelling plaintiffs to pay the said sum of $964.15, excess interest, as above set forth, said defendant bank and said defendant power company were acting in collusion and together had planned, as plaintiffs are informed and believe, to thus wrongfully, fraudulently, and illegally exact from plaintiffs the said sum of $964.15, excess interest, and that of the moneys thus wrongfully, fraudulently, and illegally exacted from plaintiffs and which plaintiffs were compelled to pay said defendants each received a part, the exact amount and proportion received by each being unknown to plaintiffs.

"That prior to the commencement of this action plaintiffs demanded of the defendants the said sum of $964.15.

"Wherefore plaintiffs demand judgment against the defendants for the sum of $964.15, with interest thereon from the 11th day of October, 1909.

"LAMOREUX, SHEA & CATE,
"Attorneys for Plaintiffs."

### Exhibit I.

"$98,150.                    Boston, Mass., May 17, 1909.

"Five months after date we promise to pay to the order of *White River Power Company*, Rhinelander, Wisconsin, at its office, ninety-eight thousand one hundred and fifty dollars, for value received, with interest at the rate of six per cent. per annum, payable at maturity, after having deposited with said company as collateral security, for payment of this or any other direct or indirect liability or liabilities of Burgess, Lang & Company to said company, due or to become due, or that may be hereafter contracted or existing howsoever acquired by said company, the following property, viz.: ($124,000) one hundred and twenty-four thousand dollars par value of the first mortgage 5 per cent. gold bonds of the

Ashland Light, Power & Street Railway Company due January 1, 1939; with full power and authority to sell and assign and deliver the whole of said property, or any part thereof, or any substitute therefor, or any additions thereto, at any brokers' board, or at public or private sale, at the option of said company, or its assigns, and with the right to be purchasers themselves at such brokers' board, or public sale, on the nonperformance of this promise; or the nonpayment of any of the liabilities above mentioned, or at any time or times thereafter, without advertisement or notice. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either, or all of said liabilities, as said company or its president or secretary shall deem proper, returning the overplus to the undersigned. In case of the insolvency of the undersigned, any indebtedness due from the legal holder hereof to the undersigned may be appropriated and applied hereon at any time, as well before as after the maturity hereof.

"BURGESS, LANG & COMPANY."

*Exhibit II.*

| | | |
|---|---|---|
| July | 13 paid | $43,000 |
| July | 22 paid | 8,600 |
| Aug. | 2 paid | 8,600 |
| Aug. | 6 paid | 4,300 |
| Aug. | 24 paid | 4,300 |
| Sept. | 14 paid | 4,300 |
| Sept. | 19 paid | 4,300 |
| Sept. | 24 paid | 8,600 |
| Sept. | 30 paid | 4,300 |
| Oct. | 8 paid | 7,740 |

The defendants demurred to this complaint on the ground of want of facts sufficient to constitute a cause of action.

For the appellants the cause was submitted on the brief of *Shea & Cate* and *C. A. Lamoreux.* They contended that even if the complaint did not, as it does, show a sale of the bonds and a peculiar and pressing necessity for immediate possession by plaintiffs, the payment was in a legal sense under duress. *First Nat. Bank v. Sargent,* 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296; *Mays v. Cincinnati,* 1 Ohio St.

268; *Adams v. Schiffer,* 11 Colo. 15, 17 Pac. 21, 29; *Astley v. Reynolds,* 2 Strange, 915; *Brumagim v. Tillinghast,* 18 Cal. 265; *Radich v. Hutchins,* 95 U. S. 210; *Chandler v. Sanger,* 114 Mass. 364; *Cobb v. Charter,* 32 Conn. 358; 30 Cyc. 1308; *Scholey v. Mumford,* 60 N. Y. 498; *Chase v. Dwinal,* 7 Me. 134.

*C. G. Cannon,* for the respondents.

KERWIN, J.   The complaint in this case alleges that the amount of the note was $98,450 and the exhibit attached thereto, purporting to be a copy of the note, states the amount to be $98,150.   We have examined the record and find that the exhibit attached to the complaint corresponds with the printed case, and we conclude that the statement in the complaint is correct and that the statement of the amount in the exhibit is merely a clerical error.   We arrive at this conclusion from the fact that the circuit judge below in his written opinion, which is a part of the record, states the amount of the note to be $98,450.   However the variance is not material and would not affect the result.

The theory of the appellants' case is that the amount of money paid and sought to be recovered back was involuntarily paid by force of wrong and fraud of the defendants. As will be seen, there are no allegations in the complaint of facts showing fraud, the only allegation being that "defendants conspired together to fraudulently exact from the plaintiffs an excessive amount of interest." This allegation, when construed in connection with other allegations of the complaint, is clearly insufficient to constitute actionable fraud. *Herbst v. Land & L. Co.* 134 Wis. 502, 115 N. W. 119; *New Bank v. Kleiner,* 112 Wis. 287, 87 N. W. 1090.   But counsel for appellants argue that the money was paid involuntarily and under duress, hence can be recovered back.

Counsel for respondents, to sustain the order below, insists upon several points which may be summed up as follows:

(1) That the payment was voluntary and made without duress and with full knowledge of all the facts, hence cannot be recovered back; (2) that the facts set up in the complaint amount to an accord and satisfaction; (3) that the facts pleaded amount to an account stated; (4) that there were no sufficient allegations of fraud; and (5) that the plaintiffs are estopped from maintaining the action under the facts alleged.

.We do not deem it necessary to review the various positions taken by counsel for respondents beyond the first stated, namely, that the payment was voluntary with full knowledge of the facts, therefore cannot be recovered back. On this ground the court below held that the complaint failed to state a cause of action, and we are of opinion that it was clearly right in so holding. We have set out in the statement of facts the complaint at length, from which it appears that all of the money paid was voluntarily paid, with full knowledge of the facts, hence it cannot be recovered back upon well settled principles of law. *Clancy v. McEnery,* 17 Wis. 177; *Custin v. Viroqua,* 67 Wis. 314, 30 N. W. 515; *Powell v. St. Croix Co.* 46 Wis. 210, 50 N. W. 1013; *Shirley v. Waukesha,* 124 Wis. 239, 102 N. W. 576; *Raipe v. Gorrell,* 105 Wis. 636, 81 N. W. 1009; *Gage v. Allen,* 89 Wis. 98, 61 N. W. 361. The complaint falls far short of making a case of payment under duress of person or property. *Williams v. Phelps,* 16 Wis. 80; *Galusha v. Sherman,* 105 Wis. 263, 81 N. W. 495; *York v. Hinkle,* 80 Wis. 624, 629, 50 N. W. 895; *Porter v. Cook,* 114 Wis. 60, 89 N. W. 823.

*By the Court.*—The order appealed from is affirmed.